UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-60760-CIV-COHN/SELTZER

SANDRA I. VILLAFANA, and other
similarly-situated individuals,

      Plaintiff,

vs.

FEEDING SOUTH FLORIDA, INC.,

      Defendant.                          /

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant, Feeding South Florida, Inc., a Florida nonprofit corporation, hereby files its Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 16], pursuant to Federal Rule of Civil Procedure 12(b)(6), as follows:

## I.   INTRODUCTION

1. This is an action for unpaid wages brought by Plaintiff pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq., and the Florida Minimum Wage Act (FMWA), § 448.110, relating to her work for Defendant. [ECF No. 1].

2. Founded in 1981, Defendant, Feeding South Florida, Inc., is a 501(c)(3), Florida nonprofit corporation that, among other things, works to end hunger in South Florida by reducing food waste and providing food and other grocery products to a network of other nonprofit agencies. This task has grown only more important during the severe and ongoing economic-recession because the number of individuals seeking emergency food assistance in South Florida has risen substantially.

3.      Plaintiff alleges that from April 2, 2010, to June 15, 2012, she worked as a "SORTER" for Defendant starting at 7:30 a.m. each day but was only paid for hours after 8 a.m. [ECF No. 16, ¶¶ 10-11].

4.      A review of Plaintiff's Complaint suggests that Plaintiff is proceeding under both an enterprise and individual coverage theory. [*See*, *e.g.*, ¶¶ 8-9].

5.      However, Plaintiff has failed to state a plausible claim for relief under either coverage theory and therefore the Court should dismiss her Complaint.

6.      Plaintiff has also failed to state a claim under the FMWA because she failed to allege that she gave proper notice as required by that act and, in fact, did not provide proper notice. The Court should therefore also dismiss Count II

## II.     MEMORANDUM OF LAW AND ARGUMENT

### a.     *Standard for a Motion to Dismiss*

In reviewing a motion to dismiss under Rule 12(b)(6), a court should take all *well-pleaded* facts in the plaintiff's complaint and all reasonable inferences drawn from those facts as true. *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting rule).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Instead, a plaintiff must plead enough facts to state a plausible basis for the claim. *Id.* In other words, a plaintiff's [f]actual allegations must be enough to raise a right to

relief above the speculative level." *Id.*; *see also* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2013) ("it is clear that in order to satisfy the requirements of Rule 8(a) the pleading must contain something more by way of a claim for relief than a . . . statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

Courts reviewing a complaint on a motion to dismiss are not required to abandon all common sense or to ignore their experience. In fact, the opposite is true:

> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157–158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. 679 (emphasis added).

### b. The Court Should Take Judicial Notice that Defendant is a 501(c)(3) Nonprofit Charity Which Works to End Hunger By Using Donations to Feed the Less Fortunate

Federal Rule of Evidence 201(b)-(c) provides that:

> The court may judicially notice a fact that is not subject to reasonable dispute because it:
> (1) is generally known within the trial court's territorial jurisdiction; or
> (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
> (c) Taking Notice. The court:
> (1) may take judicial notice on its own; or
> (2) must take judicial notice if a party requests it and the court is supplied with the necessary information.

The Supreme Court of the United States has held that a Court may take judicial notice of facts when considering a Rule 12(b)(6) motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (including in the list of items that a court may consider on a motion to dismiss "matters of which a court may take judicial notice."); *see also Newcomb v.*

*Brennan*, 558 F.2d 825, 829 (7th Cir. 1977) ("A court may take judicial notice of facts of 'common knowledge' in ruling on a motion to dismiss.").

For example, in *Manning v. Boston Medical Center Corp.*, No. 09-11724-RWZ, 2007 WL 864798, at *3 (D. Mass. Mar. 10, 2011), the district court took judicial notice that the defendant hospital was a 501(c)(3) tax exempt organization and, on that basis, dismissed a state law wage claim against the hospital because the state statute excluded from its coverage "an employee of an incorporated hospital . . . which is conducted as a public charity."

There can be no reasonable doubt that, in the Southern District of Florida, it is generally known Defendant is a nonprofit charitable organization dedicated to feeding the hungry using donations (or at least that it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned that this is so).

For example, a Westlaw search of the databases labeled "Florida News" and "Florida Papers" using the search terms "Feeding South Florida" & (charity charitable) generates 122 article results describing the charity and its activities, including, but not limited to, in sources such as the South Florida Sun Sentinel (*e.g.*, 2013 WLNR 5956054, 2012 WLNR 25655329), the Associated Press (11/22/12 APALERTFL 08:02:00, 9/6/12 AP Alert - Bus. 18:01:07), the Miami Herald (2012 WLNR 23845072, 2012 WLNR 10323375), and the Palm Beach Post (2011 WLNR 25824959, 2012 WLNR 18687455).  Copies of the cited articles are attached hereto as Exhibit A.

Defendant has also attached copies of a letter from the IRS confirming Defendant's 501(c)(3) status and Defendant's registration as a nonprofit with the Florida Division of Corporations, both of which are public records and which the Court may rely on in taking judicial notice of Defendant's nonprofit status. *Thomas v. New Leaders for New Schs.*, 278

F.R.D. 347, 349 n.5 (E.D. La. 2011) (finding that "because the organization is registered as a non-profit corporation with the Louisiana Secretary of State, the Court will take judicial notice of this fact."); *Zlotnick v. Hubbard*, 572 F. Supp. 2d 258, 262 n.4 (N.D.N.Y. 2008) (taking judicial notice that a certain organization is "a non-profit charitable organization . . . that provides free air transportation for charitable needs."); *see also* Fed. R. Evid. 1005 (recognizing that a litigant may use "other evidence to prove the content" of a public record even if the copy offered does not comply with the first part of this rule). Copies of these documents are attached as Exhibits B and C, respectively.[1]

Defendant therefore respectfully requests that this Court take judicial notice that it is a 501(c)(3) nonprofit charity which works to end hunger by using donations to feed the less fortunate. *Cf. generally Reagor v. Okmulgee Cnty. Family Res. Ctr., Inc.*, No. 11-7070, 2012 WL 5507181, at *5 (10th Cir. Nov. 14, 2012) (affirming dismissal of FLSA case brought under enterprise coverage theory because "[g]enerally, activities of nonprofits are not considered to be conducted for a common business purpose unless they engage in a commercial activity" and plaintiff did not plausibly plead the charity-defendant was engaged in commerce) (internal quotations omitted).

---

[1] The Division of Corporations record may also be viewed at http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail/EntityName/domnp-756 490-39e697be-5699-487b-bf5f-fde47ab17d5a/Feeding%20South%20Florida/Page1 (last visited May 8, 2013) and Defendant's current IRS nonprofit status can be confirmed at http://apps.irs.gov/app/eos/pub78Search.do?ein1=59-2097520&names=&city=&state=All...& country=US&deductibility=all&dispatchMethod=searchCharities&submitName=Search. *See also* IRS Explanation of 501(c)(3) Corporations (available at http://www.irs.gov/irm/part7/irm_07-025-003.html#d0e270 (last visited May 8, 2013).

### c. *Plaintiff's FLSA Claim*

The Fair Labor Standards Act "requires employers who meet its preconditions to pay workers a minimum wage and to provide overtime pay where workers exceed forty hours per week." *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010). The FLSA is triggered when either the employer falls under the FLSA's enterprise coverage provision or a particular employee falls under the FLSA's individual coverage provision. *Id.* In this instance, the Court should dismiss Plaintiff's Complaint because Plaintiff has not sufficiently pleaded either theory of coverage.

Plaintiff has failed to state a claim for individual coverage because she alleged only that she handled goods which came from out of state, not that she participated in moving them interstate or performed any other work amenable to individual coverage.

Plaintiff has failed to state a claim for enterprise coverage because Defendant is a nonprofit charity but, in light of the notice the Court can take as to Defendant's nonprofit, charitable status, Plaintiff has not plausibly alleged that Defendant is actually engaged in commerce or operated with a traditional business purpose in competition with the private sector.

### (i) *Plaintiff Failed to State a Claim for Individual Coverage*

For individual coverage to apply, the particular employee in question "must be *directly participating in the actual movement* of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315-16 (11th Cir. 2011) (emphasis in original). With regard to individual coverage, the "Supreme Court has articulated that it is the

intent of Congress to regulate only activities constituting interstate commerce, <u>not activities merely affecting commerce</u>." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (emphasis added) (citing *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943)).

Put another way, "an employee may claim 'individual coverage' if he regularly and directly participates in the actual movement of things or persons in interstate commerce." *Ceant v. Aventura Limo. & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1376 (S.D. Fla. 2012). In *Ceant*, 874 F. Supp. 2d at 1378, the district court explained that, at a bare minimum, in order to establish the existence of individual coverage a plaintiff must "state the nature" of the plaintiff's work and "must provide only straightforward allegations connecting that work to interstate commerce." *Ceant v. Aventura Limo. & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1378 (S.D. Fla. 2012); *see also Kitchings v. Fla. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1293-94 (M.D. Fla. 2005) ("For an employee to be engaged in commerce, 'a <u>substantial</u> part of the employee's work must be related to interstate commerce.'") (quoting *Boekemeier v. Fourth Universalist Soc'y in City of N.Y*, 86 F. Supp. 2d 280, 287 (S.D.N.Y. 2000))

Plaintiff's individual coverage theory appears to rest on paragraph 8 of her Amended Complaint, in which she alleges that:

> Plaintiff and those similarly-situated, by virtue of working in interstate commerce, otherwise satisfy the Act's requirements and/or Plaintiff regularly and directly participates in the actual movement of persons or things in interstate commerce. Plaintiff and other similarly situated SORTERS handled goods and materials–all of which traveled through interstate commerce–and inspects and sorts the goods and materials to ascertain whether the goods or materials are appropriate for distribution.

[ECF No 16, ¶ 8].[2]

---

[2] Plaintiff also alleges in paragraph 9 that "and/or Plaintiff and those similarly-situated was and/or is engaged in interstate commerce for Defendant . . . The Plaintiff's work for the

At least half of this paragraph consists entirely of vague, general legal conclusions regarding interstate commerce. These portions merely repeat parts of the legal test for individual coverage but do not include any actual factual allegations. This Court and others have previously rejected such vague, barebones recitations of the elements. For example, in *Perez v. Muab*, No. 10-62441-Civ, 2011 WL 845818, at *3 (S.D. Fla. Mar. 7, 2011), this Court rejected that a plaintiff stated a well-pleaded claim by alleging that "during her employment with Muab, Inc., [the plaintiff] was engaged in commerce or in the production of goods for commerce." *Cf. Gonzalez v. Old Lisbon Rest. & Bar L.L.C.*, 820 F. Supp. 2d 1365, 1370 (S.D. Fla. 2011) ("Plaintiff's complaint is devoid of any allegations describing the type of business activities in which Defendants are engaged and for what purpose. Instead, Plaintiff literally has taken the legal test for joint enterprise coverage and repeated its exact terms as his allegations . . . A reader of Plaintiff's complaint is no more informed about the alleged factual basis for Plaintiff's legal claim (i.e., that Defendants performed related activities for a common business purpose) than a reader of the federal regulation on which the test is based.")

While Plaintiff does go on to allege somewhat more specifically that she "handled goods and materials . . . which traveled through interstate commerce" in order to sort them and to determine if the items "are appropriate for distribution," this allegation completely omits a necessary point. [ECF No. 16, ¶ 8]. Namely, whether after the specific goods and materials

---

Defendant likewise affects interstate commerce." [ECF No. 16]. However, these allegations are entirely vague and not well-pleaded and therefore fail the standard applied by this Court in *Perez v. Muab*, No. 10-62441-Civ, 2011 WL 845818, at *3 (S.D. Fla. Mar. 7, 2011), and the Eleventh Circuit recognized in *Thorne*, 448 F.3d 1266, that activities "merely affecting interstate commerce" do not generate individual coverage.

which she handled reached her workplace, the goods and materials continued to move in interstate commerce.[3]

Lacking such clarification, the Court would need to engage in pure speculation to make that inference because the Eleventh Circuit holds that "[w]hen goods reach the customer for whom they were intended, the interstate journey ends and employees engaged in any further *intrastate* movement of the goods are not covered by the Act." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1267 (11th Cir. 2006).

Relying on *Thorne* and similar authorities, district courts in the Eleventh Circuit have found that individual coverage does not exist where an employee merely handles or resells goods on an intrastate basis because the interstate journey of the goods ended when those goods reached the employer's place of business. *See*, *e.g.*, *Joseph v. Nichell's Caribbean Cuisine, Inc.*, 862 F. Supp. 2d 1309, 1313 (S.D. Fla. 2012) ("Next, handling goods, in this case food or beverages, that have previously traveled in interstate commerce does not constitute engaging in interstate commerce."); *McCraken v. Bubba's World, LLC*, No. 6:09-cv-1954-Orl-28DAB, 2010 WL 3463280, at *2 (M.D. Fla. Aug. 4, 2010) (finding no individual coverage where employee sold goods that originated out of state at a retail store and that the occasional use of instrumentalities to ship those goods back out of state was insufficiently regular to qualify), *RR*

---

[3] While Plaintiff does make multiple conclusory allegations claiming that Defendant itself engages in interstate commerce or uses the instrumentalities of interstate commerce, the Eleventh Circuit has been very clear that such allegations directed at an employer are relevant only to an enterprise theory. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1316 (11th Cir. 2011) ("While the point of origin of these vehicles may be relevant under a theory of enterprise coverage, their origin is irrelevant to the issue of individual coverage–namely, whether Josendis himself *directly participated* in the *actual movement* of persons or things in interstate commerce."). Therefore, to the extent Plaintiff makes allegations regarding only Defendant itself, those allegations do not assist her in stating a claim for individual coverage. For example,

*adopted by* 2010 WL 3463277; *Top Chef Invest., Inc.*, No. 07-21598-CIV, 2007 WL 4247646, at *2 (S.D. Fla. Nov. 30, 2007) (finding no individual coverage for cook preparing food which originated out of state to serve to local customers because "Plaintiff does not allege that the food later returned to interstate commerce."); *Thompson v. Robinson*, No. 6:06-cv-771-Orl-19JGG, 2007 WL 2714091, at *1-3 (finding no individual coverage where a line cook prepared food which was sold locally).

In sum, because Plaintiff's complaint contains no well-pleaded factual allegations allowing the Court to conclude that she regularly and directly participated in the movement of anything in <u>interstate</u> commerce, the Court should dismiss Plaintiff's claim for individual coverage under the FLSA.  *See Ceant*, 874 F. Supp. 2d at 1376 (dismissing individual coverage claim because Plaintiff did not include allegations specifically connecting his work to interstate commerce).

### *(ii)   Plaintiff Failed to State a Claim for Enterprise Coverage*

In the typical case, a court determines whether enterprise coverage exists only by looking for well-pleaded allegations establishing that the employer: (1) has employees engaged in commerce or the production of goods for commerce, or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) has at least $500,000.00 of annually gross volume of sales or business done. *Polycarpe*, 616 F.3d at 1220 (citing 29 U.S.C. § 203(s)(1)(A)).  The reason the analysis nearly universally proceeds this way, by reference only to § 203(s), is that most employers operate <u>for-</u>

---

Plaintiff alleges that "the Employer/Defendant . . . uses telephonic transmissions going over state lines" but does not allege that Plaintiff herself did so.  [ECF No. 16, ¶ 7].

10

profit organizations with a *business purpose*. But this case is not the typical case and requires taking a step back to § 203(r)(1).

In *Jacobs v. New York Foundling Hospital*, 577 F.3d 93, 99 n.7 (2d Cir. 2009), the Second Circuit noted that "the existence of FLSA enterprise coverage is a two-step determination."[4] "That is, an employer must not only be an 'enterprise' under" § 203(s), but it also must be so under § 203(r)(1). *Id.* This is because § 203(r)(1) excludes certain types of organizations from the definition of an "enterprise."

> 29 C.F.R. § 779.214 further explains that:
>
> The activities described in section 3(r) are included in an enterprise only when they are performed for a "business" purpose. Activities of eleemosynary, religious, or educational organization may be performed for a business purpose. Thus, where such organizations engage in ordinary commercial activities, such as operating a printing and publishing plant, the business activities will be treated under the Act the same as when they are performed by the ordinary business enterprise. (See Mitchell v. Pilgrims Holiness Church Corp., 210 F. 2d 879 (CA–7); cert. den. 347 U.S. 1013.) However, the nonprofit educational, religious, and eleemosynary activities will not be included in the enterprise unless they are of the types which the last sentence of section 3(r), as amended in 1966, declares shall be deemed to be performed for a business purpose. Such activities were not regarded as performed for a business purpose under the prior Act and are not so considered under the Act as it was amended in 1966 except for those activities listed in the last sentence of amended section 3(r). (See § 779.21.)

(emphasis added).[5]

The Department of Labor's longstanding position is that "enterprise coverage does not apply to a private, non-profit enterprise where the eleemosynary . . . activities of the non-profit

---

[4]  While not a case about nonprofits, in *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1229 (11th Cir. 2011), the Eleventh Circuit recognized that § 203(r)(1) must be satisfied first when it referred to § 203(r)(1) for the definition of an "enterprise" and then relied on § 203(s) to explain the secondary consideration of whether an "enterprise" can be considered as "engaged in commerce or in the production of goods for commerce."

enterprise are not in <u>substantial</u> competition with other businesses." D.O.L Opinion Ltr., FLSA 2005-12NA, Sept. 23, 2005.  Likewise, federal courts, both at the circuit and appellate level, agree that "[u]nless it engages in commercial activity in competition with private entrepreneurs or qualifies as one of the organizations listed in 29 U.S.C. § 203(r)(2), a non-profit charitable organization is not an 'enterprise' under § 203(r) because it is not conducted for a 'business purpose.'" *Joles v. Johnson Cnty. Youth Serv. Bureau*, 885 F. Supp. 1169, 1175 (S.D. Ind. 1995); *accord Reagor*, 2012 WL 5507181, at *3; *Jacobs*, 577 F.3d at 97; *Kitchings*, 393 F. Supp. 2d at 1293-94; *Wagner v. Salvation Army*, 660 F. Supp. 466, 468 (E.D. Tenn. 1986).

It appears that, in an attempt to claim that Defendant engages in commercial activity in competition with private entrepreneurs, Plaintiff relies on the following three allegations in paragraph 6 of her Amended Complaint:

> Defendant also sells merchandise/apparel on the internet via its website. Defendant also charges approximately 19 cents per pound to transport the goods to [sic] tis facility, competing with logistics companies . . . Defendant's customers pay a certain price to receive "donations."

[ECF No. 16, ¶ 6].

These allegations do not make a claim of enterprise coverage plausible and certainly do not plausibly suggest that Defendant is "in substantial competition" with the private sector. D.O.L Opinion Ltr., FLSA 2005-12NA, Sept. 23, 2005.  For example, Plaintiff's allegations regarding selling merchandise/apparel are merely conclusory.  Plaintiff does not allege what sort of merchandise or apparel is at issue, whether the sales of these items could be characterized as being in "substantial competition" with any private entrepreneur, whether Defendant sells the items for a profit, or whether any private entrepreneur even exists who offers similar

---

5      "Eleemosynary" means "Of, relating to, or assisted by charity; not-for-profit."  BLACKS

merchandise and who could be characterized as in competition with Defendant. These types of allegations are necessary to allow the Court to conclude that this behavior, if true, plausibly constitutes commercial competition with the private sector.

Moreover, the mere facts that Plaintiff claims Defendant charges 19 cents per pound to distribute food or charges for a tee shirt with its logo on it does not make Defendant an "enterprise." As another district court in this circuit logically noted:

> The fact that an eleemosynary organization receives income in the form of fees or gifts does not itself render it a "for profit" or "business" enterprise. Obviously, the organization will have expenses which must be offset by revenues from some source.

*Kitchings*, 393 F. Supp. 2d at 1294 n.28.

If the Court agrees, in light of the overwhelming evidence, that it should take judicial notice Defendant is a nonprofit food bank which uses donations to feed the less fortunate, then it would be inconsistent to conclude that Plaintiff has adequately stated a claim for enterprise coverage on these allegations. *See*, *e.g.*, *Abecassis v. Eugene M. Cummings, P.C.*, No. 09-81846-CIV, 2010 WL 9452252, at *8 (S.D. Fla. June 3, 2010) (noting that a fraudulent misrepresentation claim failed under the *Twombly*/*Iqbal* standard because attachments to the complaint contradicted that any misrepresentation was made).

Stated differently, allowing Plaintiff to move forward on such ambiguous allegations, none of which directly suggest (other than the bare use of the word "competes") that Defendant engaged in any competition – let alone substantial competition – with the private sector, may have been appropriate under the "no set of facts" standard in *Conley v. Gibson*, 355 U.S. 41 (1957), but that standard is "is no longer good law." *Hernandez-Rodriguez v. A1 Sun Protection, Inc.*, No. 09–23057–CIV, 2010 WL 996529, at *2 n.1 (S.D. Fla. Mar. 17, 2010).

---

LAW DICTIONARY 559 (8th ed. 2004).

Defendant anticipates that Plaintiff may argue the Court should wait for summary judgment to address enterprise coverage, but Defendant respectfully suggests that the time is now for the Court to protect this nonprofit food bank from the time, expense, and distraction of litigation which Plaintiff has not yet demonstrated is viable. *See Arriaga-Zacarias v. Lewis Taylor Farms, Inc.*, No.. 7:08-CV-32(HL), 2008 WL 4544470, at *1 (M.D. Ga. Oct. 10, 2008) (noting that motions to dismiss "present purely legal questions and can therefore be resolved without the need for discovery, which can spare the court and the litigants the myriad costs of discovery, if the court's ruling results in dismissal."). It is obvious that Defendant is not a profit-making enterprise which competes with the private sector – it is a charity – and every dollar spent on this litigation is a dollar which could have been used to feed the less fortunate in this District.

Finally, Defendant directs the Court's attention to the Tenth Circuit's recent decision in *Reagor v. Okmulgee Cnty. Family Res. Ctr., Inc.*, No. 11-7070, 2012 WL 5507181 (10th Cir. Nov. 14, 2012). This case highlights that a Plaintiff truly has the burden to plead specific facts which enable a court to conclude that a nonprofit charity may be subject to enterprise coverage.

In *Reagnor*, the Tenth Circuit heard an appeal of the Eastern District of Oklahoma's dismissal of an FLSA complaint, in pertinent part, based on a failure adequately to plead enterprise coverage over a nonprofit. The Tenth Circuit affirmed. In doing so, the Tenth Circuit noted that the general rule is "activities of nonprofits 'are not considered to be conducted for a common business purpose unless they engage in a commercial activity,'" but that "[n]othing in the complaint suggests that [defendant nonprofit] OCFRC was engaged in a business purpose or in any type of competition." *Id.* at *5. The Tenth Circuit concluded that, absent such allegations,

a district court "cannot draw an inference that her claim that she is entitled to protection under the FLSA is plausible." *Id.*

It therefore appears that, when judicial notice of Defendant's status is taken, this Court is dealing with a situation similar to that in *Reagor* (i.e., knowledge of defendant's nonprofit charitable status and a complaint that fails to allege actual facts suggesting engagement in commercial activities in competition with the private sector). As a result, the Court should dismiss Plaintiff's claim for enterprise coverage.

### d. Plaintiff Failed to State a Claim under the FMWA

Before bringing a claim for unpaid minimum wages under the FMWA, an employee is required to provide notice to his employer of his intent to initiate the lawsuit, including a computation of all amounts owed.

Specifically, § 448.110(6)(a), Florida Statutes (2011), provides that:

> [P]rior to bringing any claim for unpaid minimum wages pursuant to this section, the person aggrieved shall notify the employer alleged to have violated this section, in writing, of an intent to initiate such an action. The notice must identify the minimum wage to which the person aggrieved claims entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice.

The purpose of the notice requirement is to allow an employer to pay any unpaid wages before also becoming liable for attorneys fees and liquidated damages. *Johnson v. Nobu Assocs. S. Beach, LP*, No. 10-21691-CIV, 2011 WL 780028, at *4 (S.D. Fla. Feb. 4, 2011), *RR adopted by* 2011Wl 772874. Thus, the FMWA continues that:

> The employer shall have 15 calendar days after receipt of the notice to pay the total amount of unpaid wages or otherwise resolve the claim to the satisfaction of the person aggrieved. The statute of limitations for bringing an action pursuant to this section shall be tolled during this 15-day period. If the employer fails to pay the total amount of unpaid wages or otherwise resolve the claim to the satisfaction of the person aggrieved, then the person aggrieved may bring a claim for unpaid minimum wages, the terms of which must be consistent with the contents of the notice.

§ 448.110(6)(b), Fla. Stat. (2011).

"Federal courts in this district have routinely dismissed claims brought under [this statute] for failure to comply with the FMWA's notice requirement." *Johnson*, 2011 WL 780028 at *3; *see also*, *e.g.*, *also Gomez v. Kern*, No. 12-20622-Civ, 2012 WL 1069186, at *2 (S.D. Fla. March 29, 2012) (dismissing on this ground); *Dominguez v. Design by Nature*, No. 08-20858-CIV, 2008 WL 4426721, at *3 (S.D. Fla. Sept. 25, 2008) (same); *Resnick v. Oppenheimer & Co. Inc.*, No.07-80609-CIV, 2008 WL 113665, at *3 (S.D. Fla. Jan. 8, 2008) (same).

In addition, an employee does not comply with the notice provision if, in her pre-suit notice, she demands more than just her unpaid wages and doing so is grounds for dismissal. For example, in *Johnson*, 2011 WL 780028 at *3-4, the district court dismissed a FMWA claim because the pre-suit notice demanded unpaid wages *plus* liquidated damages and attorneys fees. In adopting the magistrate judge's report and recommendations, the *Johnson* district court summarized the notice provision as follows:

> [T]he FMWA provides that a notice of deficiency must state "the total amount of the alleged unpaid wages through the date of the notice." Inherently, therefore, there is no allowance for inflating the amount allegedly owed by the inclusion of attorneys' fees, liquidated damages, or any other factor. The FMWA is primarily concerned with properly compensating an employee, and as such it provides an opportunity for an employer to "cure" upon receipt of proper notice. Permitting counsel to inflate the notice of deficiency would therefore undercut the statutory intent of the Florida Minimum Wage Act.

*Johnson*, 2011 WL 772874 at *1.

In this case, Plaintiff's pre-suit notice was similarly defective because Plaintiff demanded that Defendant pay her liquidated damages and $1,000.00 in attorneys fees in addition to unpaid wages. In other words, Plaintiff demanded about 2.7 times more money than she was permitted to demand. A copy of the defective pre-suit notice is attached hereto as Exhibit D.

As a result of Plaintiff's defective pre-suit notice, the Court should dismiss Count II.

16

### III.    CONCLUSION

Plaintiff has failed to alleged facts adequate to state a plausible claim for relief under either an FLSA enterprise or individual coverage theory and she provided defective pre-suit notice under the FMWA.  The Court should therefore dismiss her Complaint in total.

Wherefore Defendant, Feeding South Florida, Inc., a Florida nonprofit corporation, respectfully requests the Court dismiss Plaintiff's Amended Complaint [ECF No. 16], as well as any other relief to which the Court deems Defendant entitled.

### CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Anthony M. Georges-Pierre and Carlo Marichal, Esqs., Remer & Georges-Pierre, PLLC, Courthouse Tower, 44 West Flagler Street, Suite 2200, Miami, Florida 33130.

        s/Daniel A. Krawiec
Cheryl L. Wilke
Florida Bar No. 893780
Daniel A. Krawiec
Florida Bar No. 59136
HINSHAW & CULBERTSON LLP
One East Broward Boulevard - Suite 1010
Ft. Lauderdale, FL 33301
Telephone: 954-467-7900
Facsimile: 954-467-1024
Primary: cwilke@hinshawlaw.com
 Secondary: dkrawiec@hinshawlaw.com
Office: ftllitigation@hinshawlaw.com

18842835v1 0945414