UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-60760-CIV-COHN/SELTZER

SANDRA I. VILLAFANA, and other
similarly-situated individuals,

      Plaintiff,

vs.

FEEDING SOUTH FLORIDA, INC.,

      Defendant.                    /

**DEFENDANT'S REPLY IN SUPPORT OF**

**ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant, Feeding South Florida, Inc., a Florida nonprofit corporation, hereby files its Reply in Support of Its Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 22], as follows:[1]

### I.    JUDICIAL NOTICE

As best Defendant can tell, Plaintiff does not dispute that this Court can take judicial notice that it is a nonprofit food bank that relies on donations to feed the less fortunate in South Florida. Plaintiff merely contends that this fact, in and of itself, does not mandate granting the Motion to Dismiss. The Court should therefore take judicial notice of this fact.

---

[1] Plaintiff states that she attached an "Agency Invoice" to her Response. [ECF No. 25, p. 8]. This does not appear to be the case and, even if it were, it does not appear to be something amenable to judicial notice on a motion to dismiss.

## II.     THE FLSA

### a.     *Individual Coverage*

Contrary to Plaintiff's representation that she need only make "bare bones" allegations, [ECF No. 25, p. 5], the Supreme Court has held that Rule 8(a) requires allegations that plausibly suggest an entitlement to relief, "not [allegations] merely consistent with" such an entitlement. As Plaintiff notes, she has, in fact, alleged that she handled goods which previously traveled in interstate commerce.  But what she does not address in her motion is Defendant's primary argument – that she did not allege those goods continued to move in interstate commerce. [ECF No. 22, pp. 9-10 (citing Eleventh Circuit and other authority establishing that an employee who handles goods after they cease their interstate journey is not individually covered)].

There is nothing *inconsistent* with inferring that those goods continued to travel in interstate commerce, but there are also no allegations which make it <u>plausible</u>, especially in light of the indisputable fact that Defendant is a local food bank and Plaintiff has not alleged that Defendant sent even a single item she handled back out of state.

The Court should not approach this decision lightly.  Every dollar spent on this litigation is a dollar that will not be available to combat the growing food insecurity among our neighbors, friends, and relatives in this District.  If Plaintiff believes that, consistent with Rule 11, she can allege that the goods she handled continued to travel in interstate commerce – <u>then make her do it</u>.  Likely the reason she so strenuously opposes being made to do so (and did not file seek leave to file a second amended complaint) is that she knows she has no basis to make that allegation. Consistent with *Twombly*, this Court should exercise its inherent power, and perform its obligation, to protect its jurisdiction and Defendant from being abused where it is obvious no basis for jurisdiction exists.  *See Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986).

### b. *Enterprise Coverage*

The Court should be clear of one thing: this is not a traditional FLSA case involving an entity that indisputably engages in commercial activities in competition with the private sector. This case involves a nonprofit food bank that feeds the less fortunate and, not to belabor the point, Plaintiff does not appear to suggest taking judicial notice of this fact is inappropriate. Plaintiff instead appears to argue that notwithstanding this obvious fact, she should be able to proceed on her Amended Complaint because she alleges Defendant (1) solicits funds from outside of Florida, (2) sometimes charges other entities up to 19 cents per pound to transport food to them, and (3) she personally handled goods and materials which traveled in interstate commerce. [ECF No. 25, p. 7].[2]

The facts Defendant solicits funds from out of state or that Plaintiff handled goods which traveled in interstate commerce, even if true, are completely unimportant to the Court's decision. As explained in its Motion to Dismiss [ECF No. 22, pp. 10-15], Defendant's argument is that Plaintiff is not an enterprise at all and those two factors go toward whether a particular enterprise is subject to enterprise coverage.

The mere allegations that Defendant charges up to 19 cents per pound to transport food and therefore competes with logistics companies does not save Plaintiff's case either. As an initial matter, Defendant does not believe that it is "clear[]" that this activity competes with logistic companies and Plaintiff makes no specific allegations which make it clear either. [ECF

---

[2] Plaintiff cites authority supporting the proposition that a nonprofit can qualify for enterprise coverage if, like a business, it engages in certain commercial activity. Defendant does not dispute this point. Defendant's argument is confined to the facts as Plaintiff alleges them, which simply do not plausible suggest that *Defendant* engages in substantial competition with the private sector – as is required to fall within enterprise coverage. *See* D.O.L Opinion Ltr., FLSA 2005-12NA (Sept. 23, 2005).

No. 25, p. 7]. But even if it is clear to the Court that this behavior could under some circumstances compete with logistic companies, then the Court is still not required to abandon its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If the Court takes judicial notice of Defendant's status, it is simply not plausible – consistent with any experience or common sense – to conclude that transporting food to other food banks for 19 cents per pound competes with logistics companies. It is also even less plausible to suggest that this activity is in "substantial competition" with logistics companies, as the Department of Labor notes is necessary. D.O.L Opinion Ltr., FLSA 2005-12NA (Sept. 23, 2005) ("Please note that enterprise coverage does not apply to a private, nonprofit enterprise where the eleemosynary . . . activities of the nonprofit enterprise are not in substantial competition with other businesses.").

In a footnote, Plaintiff also references the fact that Defendant has a website where individuals may obtain clothing with Defendant's logo on it. Plaintiff appears to have invited the Court to take judicial notice of the items available on Defendant's website. If the Court reviews the website, then it will become obvious that in no real sense do these items in any way compete in a substantial way with the private sector. Regardless, even eleemosynary organizations are allowed to charge fees without turning into for-profit enterprises for the obvious reason that they must funds their operations somehow. *Kitchings v. Fla. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1294 n.28 (M.D. Fla. 2005). The mere fact an eleemosynary organization does so does not make it plausible to allege that it engages in substantial competition with private businesses.

Finally, there is no reason why this Court cannot rely on *Reagor v. Okmulgee County Family Resource Center, Inc.*, 501 F. App'x 805 (10th Cir. 2012). The Tenth Circuit recognized that nonprofits typically do not engage in sufficient commercial activity to fall within enterprise

coverage and affirmed dismissal of a plaintiff's complaint because "[n]othing in the complaint suggest[ed] that [defendant nonprofit] OCFRC was engaged in a business purpose or in any type of competition." *Id.* at 810-11.[3]  This is exactly what Defendant is asking this Court to do.

### III.   FMWA

Plaintiff argues that there is no requirement limiting the statutory notice to the items actually delineated in the statute.  She also argues that no notice is required at all.  In support, Plaintiff relies on a Florida Senate Staff Analysis and a district court opinion holding that the requirement of any notice at all violates the Florida Constitution.  Neither of these arguments are persuasive and the Court should opt to enforce Florida law as the Florida legislature actually wrote it.

   *a.   The Florida Senate Staff Analysis Does Not Support Plaintiff's Interpretation*

Plaintiff first argument appears to be as follows: [i]n enacting the FMWA, the legislature noted" that an employer, after receiving notice, may "pay the back wages or otherwise resolve the claim to the satisfaction of the employee," and this means that an employee may insist that he will not settle his unpaid wages claims unless the employer also provides him more than his wages, including other damages that the statute provides are available only after filing a lawsuit and winning in court.  [ECF No. 25, p. 8].  There are two flaws to this argument.

First, Plaintiff is wrong that the Florida "legislature noted" anything in the Staff Analysis. The Staff Analysis specifically states in section VII that "[t]his Senate staff analysis does not reflect the intent or official position of the bill's introducer or the Florida Senate."  It would make

---

[3]   Notably, the Tenth Circuit also rejected as implausible that enterprise coverage applied merely because an executive of the nonprofit stated at a board meeting that it was required to pay for overtime.  *Id.* at 810.  Obviously, such a statement is consistent with such a conclusion, thus showing that allegations consistent with coverage are not enough.

5

little sense for this Court to read into this document the Florida Legislature's intent or official position when, by its own terms, the document explicitly states it does not contain either.

Second, the language in the Staff Analysis is a quote from § 448.110(6)(b), the subsection *after* that where the notice requirement is located, § 448.110(6)(a). Its relationship to what constitutes required notice is at best unclear. But arguably the only implication the Court can draw from subsection (b) is that it authorizes a settlement for *less* than demanded. That is, subsection (b) offers two options. It allows an employer either "to pay the total amount of unpaid wages or otherwise resolve the claim to the satisfaction of the person aggrieved." (emphasis added). It is illogical to read the statute as authorizing an employee to demand more than just unpaid wages or else proceed to a lawsuit, when the statute specifically empowers the employer to moot the claim by paying nothing more than the exact amount of lost wages claimed.

In her letter [ECF No. 22-4], Plaintiff demands not only her unpaid wages but also liquidated damages and attorneys fees. Her counsel states, in underlined text, that Defendant must pay all of those amounts or she will file a lawsuit. If the Court rules that this ultimatum, which demands damages available only after an employee refuses to pay unpaid wages, satisfies the notice requirement, then the Court will effectively rewrite the statute and eliminate an employer's opportunity to correct what in some situations may simply be the result of a mistake or good faith dispute over what wages are owed.

Instead, the Court should join Judge King and Magistrate Judge Bandstra in recognizing the obvious – the notice provision is intended to "provide[] an opportunity for the employer to 'cure' upon receipt of proper notice" and [p]ermitting counsel to inflate the notice of deficiency would therefore undercut the statutory intent of the Florida Minimum Wage Act." *Johnson v.*

6

*Nobu Assocs. S. Beach, LP*, No. 10-21691. 2011 WL 772874, at *1 (S.D. Fla. 2011) (district court order); 2011 WL 780029, at *4 (report and recommendation); *see also* FLA. CONST. art. X, § 24(a) (noting, in the constitutional basis for the FMWA, that the act is also intended to protect employers).

### b.        The Notice Provision Is Explicitly Constitutional

Plaintiff states that a "Florida District Court has held that the notice is not a requirement under the FMWA." [ECF No. 25, p. 8 (citing *Throw v. Republic Enter. Sys, Inc.*, No. 8:06-cv-724-T-30TBM, 2006 WL 1823783, at *2-3 (M.D. Fla. June 30, 2006)]. That is not what the *Throw* court held. The *Throw* court noted that this is a requirement of the FMWA but found that the notice provision is unconstitutional because it "attempts to add a requirement that must be fulfilled before an aggrieved party may exercise a right previously granted by the Constitution." 2006 WL 1823783, at *2.

With all due respect to the *Throw* court, which was in the unenviable position of being the first court to answer the question, Defendant believes *Throw* was wrongly decided and that this Court should follow Judge Marra's contrary decision in *Resnick v. Oppenheimer & Co. Inc.*, No. 07-80609-CIV, 2008 WL 113665, at *2-3 (S.D. Fla. Jan. 8, 2008). *See also generally* Christopher M. Pardo, 22 ST. THOMAS L. REV. 197 (2010) (describing the competing positions and siding with Judge Marra). The Florida Constitution, article X, § 24(f), clearly provides that Florida's "state legislature may by statute . . . adopt any measures appropriate for the implementation of this amendment," a point which the *Throw* court recognizes but does not address. *Compare Throw*, 2006 WL 1823783, at *1 n.3, *with Resnick*, 2008 WL 113665, at *2.

18846098v1 0945414

### III.  CONCLUSION

Plaintiff has failed to alleged facts adequate to state a plausible claim for relief under either an FLSA enterprise or individual coverage theory and she provided defective pre-suit notice under the FMWA.  The Court should therefore dismiss her Amended Complaint in total.

Wherefore Defendant, Feeding South Florida, Inc., a Florida nonprofit corporation, respectfully requests the Court dismiss Plaintiff's Amended Complaint [ECF No. 16], as well as any other relief to which the Court deems Defendant entitled.

### CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Anthony M. Georges-Pierre, Esq., Remer & Georges-Pierre, PLLC, Courthouse Tower, 44 West Flagler Street, Suite 2200, Miami, Florida 33130.

                                         s/Daniel A. Krawiec
                                         Cheryl L. Wilke
                                         Florida Bar No. 893780
                                         Daniel A. Krawiec
                                         Florida Bar No. 59136
                                         HINSHAW & CULBERTSON LLP
                                         One East Broward Boulevard - Suite 1010
                                         Ft. Lauderdale, FL 33301
                                         Telephone: 954-467-7900
                                         Facsimile: 954-467-1024
                                         Primary: cwilke@hinshawlaw.com
                                         Secondary: dkrawiec@hinshawlaw.com
                                         Office: ftllitigation@hinshawlaw.com

18846098v1 0945414